FILED
SUPERIOR COURT
OF GUAM

2023 SEP 11 AM 9: 26

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>                                Plaintiff,<br><br>vs.<br><br>ARTHUR U. SAN AUGUSTIN,<br>MASATOMO NADEAU,<br><br>                              Defendants. | Criminal Case No. **CF0446-23**<br><br><br>**DECISION AND ORDER**<br>**(Disqualification**<br>**Pursuant to 7 G.C.A. § 6107)** |

## INTRODUCTION

This matter is before the Honorable Alberto E. Tolentino ("Judge Tolentino"), for the limited purpose of addressing Arthur U. San Augustin's ("Defendant") Statement of Objection filed Aug. 22, 2023 pursuant to 7 G.C.A. § 6107. Defendant seeks to disqualify the Honorable Alberto C. Lamorena, III ("Presiding Judge Lamorena") from presiding over the underlying case. Attorney Joaquin C. Arriola, Jr. represents Defendant. Pursuant to local rule CVR 7.1(e)(1), it has been decided that oral argument is unnecessary, and the Court hereby **DENIES** Defendant's request to disqualify the presiding judge.

## BACKGROUND

On July 3, 2023, the Grand Jury indicted Defendant on the following charges: (1) Tampering with Public Records (As a Second Degree Felony); (2) Obstructing Governmental Functions (As a Misdemeanor); and (3) Official Misconduct (As a Misdemeanor). Indictment, July 3, 2023. The case was originally assigned to Judge Tolentino. Notice of Judge

Assignment, July 27, 2023. Judge Tolentino recused himself under 7 GCA § 6105. Form One-Disqualification, July 31, 2023. The case was then assigned to Presiding Judge Lamorena. Notice of Judge Assignment, Aug. 2, 2023. On August 22, 2023 Defendant filed the Statement of Objection. On August 25, 2023, Presiding Judge Lamorena filed an Answer to Statement of Objection. On August 30, 2023, the People filed a Memorandum of Points and Authorities in Response to Statement of Objection 7 GCA § 6107.

## DISCUSSION

Title 7 G.C.A. § 6105 governs whether substantive grounds exist for disqualification under 7 G.C.A. § 6107. *Van Dox v. Superior Ct.*, 2008 Guam 7 ¶ 17. A judge shall be disqualified from "any proceeding in which his or her impartiality might reasonably be questioned. . ." 7 G.C.A. § 6105(a). Such impartiality can be demonstrated:

(1) Where he or she has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he or she served as a lawyer in the matter in controversy, or a lawyer with whom he or she previously practiced law served during such association as a lawyer or either has been a material witness concerning the matter;

(3) Where he or she has served in governmental employment and in such capacity participated as counsel, advisor, or material witness concerning the proceeding or, as such government employee, expressed an official opinion concerning the merits of a particular matter in controversy;

(4) Where he or she knows that he or she, individual or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in the subject matter in controversy or is a party to the subject matter in controversy or is a party to the proceeding, or in any other interest that could be substantially affected by the outcome of the proceeding;

(5) Where he or she or his or her spouse, or a person within the third degree of relationship to either of them, or the spouse of such person:

(A) is a arty to the proceeding, or an officer, director, or trustee of a party;

(B) is acting as a lawyer on the proceeding;

(C) is known by the Judge to have an interest that could be substantially affected by the outcome of this proceeding;

(D) is to the Judge's knowledge likely to be a material witness in the proceeding.

7 G.C.A. § 6105(b).

## I.

Defendant seeks Presiding Judge Lamorena's disqualification from this case on the basis of an alleged bias towards the current Attorney General ("AG") of Guam, Douglas Moylan. Defendant argues that then-candidate AG Moylan listed Presiding Judge Lamorena as a "professional reference" on a resume posted to AG Moylan's public Facebook profile, and that this amounts to a tacit endorsement of AG Moylan's candidacy. Statement of Objection at 5. The "professional reference" is based on AG Moylan's service as Presiding Judge Lamorena's law clerk thirty years prior. Statement of Objection at 4. Defendant further argues that Presiding Judge Lamorena's "endorsement of AG Moylan would likely be construed as the lending of the prestige of Presiding Judge Lamorena's judicial office to advance the interests of AG Moylan". *Id.* Defendant avers that the endorsement of AG Moylan is particularly relevant in this case, as it "relates to alleged "government corruption" and the political investigations of public officials" *Id.* The resume and the "professional reference" contained therein is still posted on AG Moylan's public Facebook page, which is currently being used to provide official announcements for the Office of the Attorney General. *Id.*

Presiding Judge Lamorena denies that Defendant provided a reasonable basis for disqualification. Presiding Judge Lamorena asserts that 1) he never publicly endorsed AG Moylan or any other candidate in the 2022 election cycle; (2) he has never knowingly or intentionally created a Facebook profile; and that (3) AG Moylan's resume and "professional reference" contained therein was a unilateral act by AG Moylan which Lamorena "gave no input or direction in". *Id.*

## II.

Defendant does not allege that Presiding Judge Lamorena participated in the case as a lawyer in private practice, that he is a material witness concerning the matter, nor that he or some person within the third-degree relationship to him retains an interest in the proceeding. Instead, Defendant's objection rests exclusively on 7 G.C.A. § 6105(a); to wit, that Presiding Judge Lamorena has a personal bias or prejudice concerning AG Moylan. Thus, the issue is whether Judge Lamorena's impartiality might be reasonably questioned under Section 6105(a). When evaluating such a contention, the Supreme Court of Guam has instructed that "what matters is not 'actual bias,' but the 'appearance of bias.'" *Van Dox v. Superior Court of Guam*, 2008 Guam 7 ¶ 32 (quoting *Dizon v. Superior Court of Guam*, 1998 Guam 3 ¶ 10, n.3). The appearance of bias is judged from the standard of a reasonable person given all the relevant facts in the controversy. *Id; see also Ada v. Gutierrez*, 2000 Guam 22 ¶ 12.

### A.

Title 7 GCA § 6105 is based on 28 U.S.C. § 455 and governs the substantive grounds for disqualification of judges. Section 6105 provides:

§ 6105. Grounds of Disqualification.

(a) Any judge shall disqualify himself or herself in any proceeding in which his or her impartiality might reasonably be questioned, but if, following complete disclosure to all parties in the proceedings of the reasons for disqualification, all parties agree to having the judge continue to sit in the proceedings, he or she need not disqualify himself or herself.

7 GCA § 6105(a) (2013) (emphasis added); *See Ada v. Gutierrez*, 2000 Guam 22 ¶ 12, n.2. Section 6105(a) requires disqualification for the appearance of partiality, such as when a judge's "impartiality might reasonably be questioned." 7 GCA § 6105(a). In other words, "disqualification may occur even though a judge is not actually biased or

prejudiced, and has no extrajudicial knowledge of disputed evidentiary facts." *US v. Salemme,* 164 F.Supp.2d 49, 80 (D. Mass. 1998) (citation omitted). Actual bias is not a prerequisite for recusal, as the appearance of impropriety is enough. *See Liteky v. United States,* 510 U.S. 540, 548 (1994). "The standard for recusal is the appearance of impropriety and [ ] no actual showing of bias is necessary for recusal to lie." *Dizon v. Superior Ct.,* 1998 Guam 3 ¶ 32. The purpose of Section 455(a) "to promote public confidence in the integrity of the judicial process" and to avoid even the "appearance of impropriety." *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 860 (1988). "Avoiding the appearance of impropriety is as important to developing public confidence in the judiciary as avoiding impropriety itself." *US v. Hollister,* 746 F.2d. 420, 425-26 (8th Cir. 1984); *See also* 28 U.S.C. § 455(a). "[J]udges and justices have 'as strong a duty to sit when there is no legitimate reason to recuse as [they] do[ ] to recuse when the law and facts require.'" *People v. Tennessen,* 2010 Guam 12 ¶ 49 (quoting *Nichols v. Alley,* 71 F.3d 347,351 (10th Cir. 1995)).

## B.

Courts often apply a reasonable person standard to determine whether impartiality or the appearance of impropriety must be reasonably questioned. This standard evaluates whether a reasonable person with knowledge of all the facts would conclude that a judge's impartiality might reasonably be questioned. *See United States v. Studley,* 783 F.2d 934, 939 (9th Cir. 1986). The Supreme Court of Guam has adopted this objective standard and has held that "[t]he appearance of bias is judged from the standard of a 'reasonable person' who knows all the facts, and understands the 'contexts of the jurisdictions, parties, and controversies involved,' including such 'realities of the Guam judicial system' as the relatively small number of lawyers in the Guam bar and 'the nature of Guam families.'"

*Van Dox,* 2008 Guam 7 ¶ 32 (quoting *Ada,* 2000 Guam 22 ¶¶ 12-13). Section 455(a) recusal cases are "extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances more than by comparison to situations considered in prior jurisprudence." *United States v. Jordan,* 49 F.3d 152, 157 (5th Cir. 1995).

### III.

Generally, when a former law clerk appears before a judge for whom they once clerked, it is insufficient grounds to make a reasonable person question a judge's impartiality. *See In re Cooke,* 160 B.R. 701, 707 (D.Conn. 1993) (citation omitted). To cure the appearance of impropriety, some federal courts have adopted either rules or decided cases prohibiting former law clerks or judges from appearing before a judge for a period after their clerkship. A judge's recusal is also not required where there is insufficient evidence that an attorney worked on case during their clerkship. *See e.g., Reilly by Reilly v. S.E. Pa. Transp. Auth.,* 479 A.2d 973 (Pa. Super. Ct.1984) (finding a judge's recusal unnecessary where the record did not suggest the attorney was involved in the case during his clerkship).

The United States Supreme Court, the First Circuit, and the Eighth Circuit have adopted recusal rules which prohibit former law clerks from practicing before their judge for a period after their clerkship. *See e.g., Ghee v. Artuz,* 285 F.Supp.2d 328, 329 (E.D.N.Y. 2003) (citing U.S. Sup. Ct. R. 7) (The U.S.S.C. prohibits a former law clerk from appearing for two years from their date of separation.); *In re Martinez-Catala,* 129 F.3d 213,218 (1st Cir. 1997) (citing 1st Cir. R. 46) ("Courts often have prophylactic rules that forbid a former law clerk from appearing in that court for a year or more after the clerkship, but no such rule is claimed to have been violated in this case."). The Eighth Circuit prohibits law clerks from appearing for a period of one year after their clerkship.

*See Patzner v. Burkett,* 779 F.2d 1363, 1372 (8th Cir. 1985). Initially, in *Hollister*, the Eighth Circuit Court of Appeals reviewed a judge's refusal to recuse himself where the prosecutor completed her clerkship three months earlier. *See Hollister,* 746 F.2d. at 425. The *Hollister* Court said that it refused to adopt a bright-line recusal or disqualification rule for judges, recommending a one-year insulation period before a judge could hear a case involving a former law clerk, and ultimately left recusal to the judge's discretion. *Id.* In *Patzner*, the Eighth Circuit Court of Appeals later explained that it had promulgated a one-year rule for the recusal of former law clerks:

> In light of *Hollister*, the Eighth Circuit Court of Appeals has promulgated a rule providing that a circuit court law clerk may not 'after leaving employment participate in any way as an attorney in any case pending in this Court during his or her term of service, or appear at counsel table or on brief in any case heard during a period of one year following separation from service with the Court.'

*Patzner,* 779 F.2d at 1372 n.8. (quoting 8th Cir. R. 30). The *Patzner* Court noted the adoption of a recusal rule for law clerks but held, "We leave [the] question of a judge's [disqualification] to be resolved by the trial judge ...." *Id.* at 1372.

There are also federal district courts with case law establishing similar recusal rules applicable to judges and law clerks. *See e.g. Smith v. Pepsico,* 434 F.Supp. 524, 526 (S.D.Fla. 1977) (recognizing that where judges and their former law clerks were concerned, the custom was a one-year recusal period in the district); *Duke v. Pfizer, Inc.,* 668 F .Supp. 1031, 1036 (E.D.Mich. 1987) (citations omitted) ("[A] one- or two-year period of repose is enough to cure any possible appearance of impropriety."); *Ghee v. Artuz,* 285 F.Supp.2d 328, 329 (E.D.N.Y. 2003) (adopting a rule disqualifying former law clerks from appearing before the court for one year).

The Defendant contends Presiding Judge Lamorena's impartiality might reasonably be questioned based on his former law clerk's appearance in this matter and provides the following arguments: (1) that he and AG Moylan enjoyed a close professional relationship for approximately six months during his clerkship, and Presiding Judge Lamorena relied on AG Moylan to conduct research relating to his assigned docket and provide guidance on legal, procedural, and other issues; (2) that despite thirty years between AG Moylan's departure as Presiding Judge Lamorena's law clerk and his election to Attorney General, a reasonable person might question his impartiality, as it creates the appearance of impropriety requiring recusal. Objection at 3. The Defendant further contends that Presiding Judge Lamorena gave his tacit endorsement of then-candidate AG Moylan's campaign due to the former's name being listed as a "professional reference" on AG Moylan's personal Facebook profile. *Id.*

Presiding Judge Lamorena admits AG Moylan was his law clerk from 2001 to early 2002. Answer at 2. Presiding Judge Lamorena contends that the professional reference posted on Facebook indicates (1) that Doug Moylan served as his law clerk 30 years ago, and (2) that as someone who employed him, he is knowledgeable of Moylan's ability as a lawyer. Answer at 2. Presiding Judge Lamorena further argues that the existence of the resume doesn't suggest his advocation or endorsement of any specific skill/ability AG Moylan possesses, or of his 2022 campaign in general. *Id.*

Absent other indications of bias or prejudice, this Court will not assume that a reasonable person knowing all of the circumstances would question Presiding Judge Lamorena' s impartiality based on AG Moylan's prior service as Presiding Judge Lamorena's law clerk thirty years prior.

## IV.

Next, the court looks at the Defendant's allegation that Presiding Judge Lamorena endorsed AG Moylan's candidacy in the 2022 general election.

There are circumstances when a judge has a personal relationship with an attorney that would make it difficult for a judge to be impartial, or to be perceived as impartial by an objective observer. *See United States v. Murphy,* 768 F.2d 1518, 1538 (7th Cir. 1985). Courts have frequently noted that a "judge's friendship with counsel appearing before him or her does not alone mandate disqualification." *In re Cooke,* 160 B.R. 701, 708 (Bankr. D. Conn. 1993) (citing *Henderson v. Dep 't of Public Safety and Corrections,* 901 F.2d 1288, 1295-96 (5th Cir. 1990)). "A prior co-counsel relationship accompanied by an additional association, such as a close personal or social involvement, or an ongoing financial relationship, may cause a reasonable person to question a judge's impartiality." *Bonelli v. Bonelli,* 570 A.2d 189, 192 15 (Conn. 1990) (citing *Potashnick v. Port City Construction Co.,* 609 F.2d 1101, 1114-15 (5th Cir. 1980) (holding that a judge with an extensive business and professional relationship with counsel should have disqualified himself).

The Seventh Circuit has acknowledged that in contemporary legal culture, relationships between a judge and attorney are common. *See Murphy,* 768 F.2d at 1537. That court observed that "a judge need not disqualify himself just because a friend-even a close friend-appears as a lawyer." *Id.* The court, however, noted "that when the association exceeds 'what might reasonably be expected' in light of the associational activities of an ordinary judge, the unusual aspects of a social relation may give rise to a reasonable question about the judge's impartiality." *Id.* at 1538 (internal citation omitted). A judge's acquaintance with an attorney does not typically require disqualification, but there are

cases where the degree of intimacy warrants disqualification. *Id.* at 1538 (finding that an objective observer might reasonably question a judge's neutrality, where the judge and prosecutor were close friends and had undisclosed plans to go on a joint family vacation after trial). There are those cases that are inapposite. *See e.g., Jordan v. Henderson v. Dept. of Public Safety,* 901 F.2d 1288, 1296 (5th Cir. 1990) (finding recusal inappropriate where one party alleged the judge and opposing counsel were good friends and had known opposing counsel since he was a kid).

Presiding Judge Lamorena admits and contends the following: (1) that he never publicly endorsed AG Moylan or any other candidate in the 2022 election cycle; (2) that AG Moylan's resume and "professional reference" contained therein was a unilateral act by AG Moylan which Presiding Judge Lamorena "gave no input or direction in"; (3) that he has never knowingly or intentionally created a Facebook profile; (4) that the existence of a professional reference only indicates that AG Moylan once served as Presiding Judge Lamorena's law clerk, and that Presiding Judge Lamorena is knowledgeable of AG Moylan's abilities as a lawyer based on that prior employment. Answer at 2.

The present case is distinguishable from the cases cited above, as there are no unusual aspects of this relationship that may give rise to a reasonable question about the judge's impartiality. Unlike in *Murphy*, there were no plans to spend time together outside the context of their professional relationship as legal colleagues practicing in the same community. In the present case, Presiding Judge Lamorena neither had personal engagements with AG Moylan, nor did he attend political campaign functions on behalf of then-candidate AG Moylan. Like in *In Re Cooke*, the relationship between Presiding Judge Lamorena and AG Moylan will likely not cause a reasonable person to question the judge's impartiality even if that relationship was personal rather than professional in

nature. Unlike in *Bonelli*, there is no business or financial relationship between Presiding Judge Lamorena and AG Moylan. Finally, unlike in *Murphy*, the social relation established between Presiding Judge Lamorena and AG Moylan does not imply extensive personal contacts such that there would be a special willingness to rely on AG Moylan's representations as a prosecutor, nor a reluctance to hand a defeat to the Attorney General in a highly visible corruption case.

Indeed, it appears Presiding Judge Lamorena was not even aware of the fact that AG Moylan was still using him as a professional reference thirty years after the latter's service as law clerk ended. This fact alone makes this case distinguishable from the cited cases, as the record is devoid of any ongoing personal or social relationship between Judge Lamorena and AG Moylan, nor does the record contain evidence that Judge Lamorena publicly supports AG Moylan's "tough on crime" political platform. Absent any facts to the contrary, a reasonable person would not find that Presiding Judge Lamorena's impartiality should "reasonably be questioned" to warrant disqualification.

**CONCLUSION**

For the above reasons, the Court **DENIES** Defendant's request to disqualify the Presiding Judge.

SO ORDERED, this _____ day of ___08 SEP 2023___ 2023.

_____
HONORABLE ALBERTO E. TOLENTINO
Judge, Superior Court of Guam